CONNELLY v. EARL FRAZIER SPECIAL SCHOOL DISTRICT.

Opinion delivered December 15, 1924.

1. SCHOOLS AND SCHOOL DISTRICTS—AUTHORITY OF DISTRICT TO BORROW MONEY.—Special Acts 1923, No. 324, § 4, authorizing the directors of a special school district to execute promissory notes or bonds and to mortgage the property of the district to secure same, is sufficient authority to the directors to borrow money.

2. SCHOOLS AND SCHOOL DISTRICTS—AUTHORITY TO BIND DISTRICT.—Special Acts 1923, No. 324, § 4, authorizing the directors of a certain school district to execute negotiable paper and mortgage the district's property, but providing that the "directors shall in no way be personally liable for the payment" thereof, sufficiently indicates that such paper was to be executed in the name of the district.

3. INJUNCTION—SUFFICIENCY OF COMPLAINT ON DEMURRER.—In a suit to enjoin issuance of school bonds for a new school building, a complaint alleging that the district's present building is practically new and sufficient, and that the erection of a new building would result in a shortening of the school term, and that the directors were paying an excessive price for land to be used, was good against demurrer, but the demurrer should be treated as a motion to make the complaint more specific.

4. SCHOOLS AND SCHOOL DISTRICTS—DISCRETION OF DIRECTORS.—School directors are invested with a large discretion which will not be interfered with unless an arbitrary abuse thereof is contemplated.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*J. C. Marshall,* for appellant.

This district has no power to borrow money for building a schoolhouse, as a city district might do without a favorable vote of the people. The act of 1909, Acts 1909, p. 947, and the repealing act, 1919, p. 6, provide for forming country special districts with all the powers of city districts except as "therein provided," and it is therein provided that they can borrow money to build only by the assent of the people. C. & M. Dig. §§ 8831-8842. The same may be said of consolidated districts. C. & M. Dig., §§ 8849-8857. "All special school districts in the State of Arkansas" were authorized by the act of 1905, and are now authorized by the amend-

ing act of 1923, C. & M. Digest, §§ 8977-8, to borrow money to build, and yet this language has never been held to include country special districts. The act of 1917, C. & M. Digest, §§ 8984-7, which includes the act creating this district, Acts 1923, p. 698, since it authorizes "any special, rural special or consolidated school district in the State" to borrow money to build, limits this power in case of rural districts to cases where the assent of the people is given. The district can have only such power to build as is expressly given or necessarily implied, and all such grants are also limitations of power. 35 Cyc. 925; 152 Ark. 507; 42 Ark. 279; 155 Ark. 161. The same is true of the power to borrow money, and of the power to mortgage school property. 35 Cyc. 976, 988, 924. The special act involved here, see § 4 thereof, provides neither for borrowing nor building, these words or the equivalent thereof not being used; and neither of these powers can be implied, for there is nothing from which to imply them. The power to execute paper for an indebtedness incurred is not the borrowing power. 78 Ind. 192, 193. The special act must be construed so as to stand with the general law, if possible. 201 S. W. 116 (Ark.); 146 Ark. 47; *Id.* 32. A special act restricts a prior general act only as to the subject-matter covered by it. If the special act is not incompatible with the general law, both must stand. 26 L. R. A. (N. S.) 207. See also 169 N. Y. S. 976; 108 S. E. 84. If the proposed action of the school board was so clearly unreasonable as to amount to an oppressive and clear abuse of discretion, then it was proper for the court to interfere by injunction. 32 C. J. 252, 254; 166 N. W. 202; 133 N. W. 169; 81 S. E. 1001; 84 Ark. 29; 105 Ark. 77.

*Emerson & Donham,* for appellee.

It is clear from the language of the act, § 4, that the notes and bonds should be executed in the name of the school district. That the name of the district was omitted was clearly a typographical error. The act

is not invalid because it does not state for what purpose notes or bonds may be executed. Certainly they could only be executed for school purposes, and the directors would then be required to look to the general law to ascertain the purposes for which special school districts may execute notes and bonds. Section 4 of the special act in no way conflicts with the general law on the subject, and, under appellant's contention and authorities cited, the two acts must stand. This court has clearly distinguished between the powers of a *rural special school district* established and created under the general law authorizing its creation, and a *special school district* created by an act of the Legislature. 142 Ark. 279. And this distinction has been made also by the Legislature itself. Act 180, Acts 1917; C. & M. Digest, § 8984. It is therefore settled that it was not the intention of the Legislature to require special school districts created by special acts of that body to submit the question of borrowing money for building purposes to the electors of the district, but left it entirely discretionary with the board of directors, and that the act of 1909 as amended by the acts of 1911 and 1919 authorizing the creation of rural special school districts, has no application to special school districts created by special acts of the Legislature. If it be conceded that it was the duty of appellee to procure a favorable vote of the electors before borrowing money and issuing bonds, then appellant is not affected, since the issuance of notes and bonds without first submitting the question to the electors would be *ultra vires,* and the notes and bonds executed by the board would be void, and appellant would not suffer. 115 Ark. 161; 142 Ark. 279; 78 Ark. 118. In the absence of any allegations in the complaint that the board of directors acted fraudulently or collusively, it merely being charged that the directors were using their discretion unwisely in attempting to erect a school building, there was no ground for interference by injunction. 32 C. J. 252; 24 R. C. L. 575; 182 Ia. 691; 5 A. L. R. 841; 75 S. E. 166; 62 S. E. 902.

HUMPHREYS, J.   This is a suit brought by appellants against appellee to enjoin the directors of the Earl Frazier Special School District of Pulaski County from borrowing money and issuing bonds to build a new school-house in the district, upon two alleged grounds; first, that the act creating the district is void because it contains no authority to borrow money, and because it does not state in whose names the notes and bonds may be executed; second, that, if the act is valid, the directors were about to recklessly expend and waste the school funds in the construction of an unnecessary school building.

A demurrer was filed to the complaint, upon the alleged ground that it did not state sufficient facts to constitute a cause of action.

The demurrer was sustained and the complaint dismissed, from which judgment an appeal has been duly prosecuted to this court.

(1).   Earl Frazier Special School District of Pulaski County was created by special act of the Legislature, No. 324.   Section 4 of the act is as follows: "A majority of said board of directors is hereby authorized to execute a promissory note, or notes, or bonds, in the name of, and for such sums of money as may be required, which shall be similar in form as are like instruments of like kind, and shall have the same force and effect as though it had been the act of an individual; and said directors may mortgage any of the property of said district and pledge the revenues thereof as security for payment of said notes and bonds, and against such instruments said district shall be allowed no defense by virtue of its capacity as a school district, in law or in equity, not accorded to individuals.   Said directors shall in no way be personally liable for the payment of said notes or bonds.   Nothing in this act shall be so construed as shall prevent or preclude from such school district any right in law or in equity which as a natural person it may claim."

This section clearly authorizes the directors to execute negotiable paper and to mortgage the property of

the district to secure same. We think it just as clearly authorizes the directors to borrow whatever money may be necessary for school purposes, including construction of necessary school buildings. It will be observed that the first part of the section provides that the notes and bonds may be executed by the directors, "for such sums of money as may be required." There is no inhibition in our Constitution against the creation of the special school district in rural territory by the Legislature, and investing it with the same power and authority which may be conferred upon special school districts in cities and towns. Again, we do not think § 4 of said act is invalid because it does not state in whose name the notes, bonds, and mortgages may be executed. The section clearly indicates that they are to be executed for the benefit of the school district, and not for the benefit of the directors. It is provided in the section that the directors shall not be personally responsible upon them. The clear inference is that the school district shall be responsible for them. It is apparent that the name of the school district was omitted through typographical error.

(2). The gist of that part of the complaint charging an abuse of the discretion on the part of the directors in attempting to construct a new school building, is that they are about to destroy a practically new building, which is in every way ample for school purposes, and to erect one in its stead at a cost of $58,000, which will result in cutting the school term down to a very short period of time each year; and are about to pay $1,200 for two acres of land worth only $200. These are general allegations of fact, but not so general that they may be characterized as conclusions only. As the allegations are more than mere conclusions, the court should have treated the demurrer as a motion to make the complaint more definite and certain by requiring the appellants to state the accommodations and conveniences afforded by the old building, the number of scholars in the district, the revenues thereof, and the length of time the

annual terms of the school district will be cut down, etc., if the new building is constructed. The complaint should specifically set out facts showing a clear abuse of discretion amounting to a reckless expenditure and waste of the school funds, or a shortening of the school term to such an extent that it would destroy the real purposes for which the school district was created. The main purpose of public schools is to educate the children, and not merely to provide equipment which cannot be used. The law, however, accords to school directors a broad discretion, and courts will not interfere with their discretion unless an arbitrary abuse thereof is contemplated.

On account of the error indicated, the decree is reversed, and the cause is remanded, with leave to appellants to amend their complaint if they desire to do so, and for further proceedings not inconsistent with this opinion.

HART, J., concurring.